# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RANDALL TURNER, )<br>　　No. 133233, )<br>　　　　　　　　　　　　　　　　　　 )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　　　 )<br>v. )<br>　　　　　　　　　　　　　　　　　　 )<br>TONY PARKER, *et al.*, )<br>　　　　　　　　　　　　　　　　　　 )<br>　　　　Defendants. ) | No. 3:18-cv-00003<br>Judge Trauger |

## **M E M O R A N D U M**

Randall Turner, an inmate of the Turney Center Industrial Complex in Only, Tennessee, brings this *pro se* action under 42 U.S.C. § 1983 Tony Parker, Jason Woodall, Jonathan Lebo, Johnny Fitz, Wanda Markland, Charles Sweat, Captain f/n/u Taylor, Kevin Johnson, and Arthur Bellott, alleging violations of the plaintiff's civil rights. (Docket No. 1). The plaintiff seeks pauper status (Docket Nos. 2, 11, 19, 20, 21) and the appointment of counsel (Docket No. 3). The plaintiff also has filed two motions to supplement the record (Docket Nos. 8 and 9), a notice (Docket No.15), and a motion for an extension of time (Docket No. 22).

## I.     Application to Proceed *In Forma Pauperis*

The plaintiff falls within the scope of 28 U.S.C. § 1915(g), which bars prisoners from bringing a civil action or appealing a judgment in a civil action *in forma pauperis* if the prisoner has, on three (3) or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of

1

serious physical injury. 28 U.S.C. § 1915(g).

Because he has had at least three lawsuits previously dismissed as frivolous,[1] plaintiff Turner may not proceed *in forma pauperis* and instead must pay the full filing fee in advance in order to pursue his lawsuit, <u>unless</u> he is under imminent danger of serious physical injury. *Wilson v. Yaklich*, 148 F.3d 596, 603-04 (6th Cir. 1998).

The plaintiff, who is not a member of a gang, alleges that he is in imminent danger because at the West Tennessee State Penitentiary, non-gang members are housed with gang members, a practice that the defendants know poses a risk of harm to non-gang member inmates. In particular, on November 9, 2017, members of the Crips gang "strip searched" and assaulted the plaintiff in the kitchen restroom. (Docket No. 1 at 2). As a result of the assault, the plaintiff received four stitches over his right eye. (*Id*. at 3). Although the plaintiff met with a counselor about being placed in protective custody on November 22, 2017, the plaintiff was moved from a single cell to a double cell with a Vice Lord gang member on December 7, 2017. (*Id*. at 7). Other gang members "have been yelling through the [cell] doors that the Plaintiff is gay . . . trying to get [the Plaintiff] and V. Lord into a fight." (*Id.*) On December 18, 2017, when the plaintiff was in the shower, the Vice Lord gang member tried to take all of the plaintiff's property. (*Id.*) On December 24, 2017, officers Doyle and McKinney tried to move the plaintiff into a cell with a member of the Crips gang and the plaintiff refused to move. (*Id.* at 8). On December 26, 2017, a Vice Lord gang member delivered the plaintiff's lunch tray to him, which the plaintiff refused to eat, fearing for his safety as no maximum security inmate is supposed to have access to the food of an inmate in protective custody. (*Id.* at 9).

---

[1]*See, e.g.,*, *Turner v. Schofield*, No. 1:15-cv-00132 (E.D. Tenn. 2015)(dismissed for failure to state a claim); *Turner v. Kinsey*, No. 1:02-cv-25 (E.D. Tenn 2002)(dismissed as frivolous and for failure to state a claim); *Turner v. Erlanger Hospital*, No.1:02-cv-24 (E.D. Tenn. 2002)(dismissed for failure to state a claim); *Turner v. Cupp,* 1:99-cv-157 (E.D. Tenn. 1999)(dismissed as frivolous and for failure to state a claim).

The plaintiff was subsequently transferred and is currently confined at the Turney Center Industrial Complex. He alleges that, like at the West Tennessee State Penitentiary, non-gang member inmates are housed with known gang member inmates, and that the gang inmates at Turney Center are allowed to "run wild." (Docket No. 17 at 2). According to the plaintiff, these inmates have access to knives and previously have engaged in attacks with the knives. (*Id.*) The plaintiff further alleges that prison officials are unwilling to protect the plaintiff from harm by gang members because these defendants refuse to move the plaintiff "to a less violent unit." (*Id.* at 1).

For the purposes of § 1915(g), the court considers whether a plaintiff is in imminent danger at the time of the filing of the complaint. *Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) ("[T]he plain language of § 1915(g) requires the imminent danger to be contemporaneous with the complaint's filing."). Although the United States Court of Appeals for the Sixth Circuit has not offered a precise definition of imminent danger, it has suggested that the threat of serious physical injury "must be real and proximate." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008). Moreover, the Sixth Circuit has noted that "[t]he imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading." *Vandiver*, 416 F. App'x at 562.

As a *pro se* plaintiff, Turner is entitled to have his complaint liberally construed. *Vandiver*, 416 F. App'x at 562. Moreover, at this stage in the proceedings, the court must accept as true the factual allegations in the complaint, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). The court cannot decline pauper status simply because it finds the factual allegations of imminent danger to be improbable or unlikely. *Id.*

With these principles in mind, the court finds that the complaint alleges a presently existing, continuing imminent danger to the plaintiff's well-being. Although the plaintiff's allegations regarding his confinement at the West Tennessee State Penitentiary no longer constitute imminent danger of

3

serious physical harm because the plaintiff has been transferred to another facility, the plaintiff alleges that his current place of confinement, Turney Center Industrial Complex, exposes the plaintiff to similar safety issues. According to the plaintiff, non-gang member inmates are housed with known inmate gang members who are allowed to "run wild." (Docket No. 17 at 2). According to the plaintiff, the inmate gang members have access to knives, and the plaintiff fears for his safety. (*Id.*) The plaintiff further alleges, as an ongoing matter, that prison officials (excluding Ms. Himes) are unwilling to protect the plaintiff from harm by gang members because they refuse to move the plaintiff away from the gang member inmates. (*Id.* at 1).

The plaintiff's allegations are not necessarily delusional or irrational, and the court must, for now, accept them as true. The court therefore finds that the plaintiff has alleged imminent danger of serious physical injury. In addition, the plaintiff specifically requests injunctive relief to prevent the plaintiff from being housed with inmate gang members to keep their threats of harm to the plaintiff from coming to fruition. Accordingly, the court will grant the plaintiff permission to seek pauper status.

**II.     PLRA Screening Standards**

Having determined that the plaintiff may proceed as a pauper, the plaintiff's complaint is before the court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

**III.    Motions to Supplement and Notice**

The plaintiff filed two motions to supplement his complaint (Docket Nos. 8 and 9) and a notice to the court (Docket No. 15).[2] The first motion to supplement documents the plaintiff's efforts to exhaust his administrative remedies prior to filing this lawsuit. The second motion to supplement provides additional context for the claims raised in the original complaint. No new defendants or claims are added.

In his notice to the court, the plaintiff describes events occurring after the plaintiff's transfer from the West Tennessee State Penitentiary to the Morgan County Correctional Complex and then to the Turney Center Industrial Complex. In his notice, the plaintiff seeks to add another defendant to this action, Dr. f/n/u Bigham. (Docket No. 15). The plaintiff alleges that Bigham, who works at the Turney Center Industrial Complex, refuses to provide medical treatment to the plaintiff. (*Id.* at 2). The court construes the plaintiff's notice as a motion to amend the complaint.

Rule 15(a) (2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

There appears to be no undue prejudice to the opposing parties by permitting the plaintiff to amend his complaint at this time; no defendants have been served. With regard to the futility of the plaintiff's proposed amendment, the court finds that the law is well settled that the Eighth Amendment

---

[2]The plaintiff filed two identical notices to the court. (Docket Nos. 15 and 17). Herein, the court will cite to the earlier filed notice.

to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. *See Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *See Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir. 1984). The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). The court finds that the plaintiff's proposed amendment is not futile; therefore, the plaintiff's motion to amend will be granted, and Dr. f/n/u Bigham will be added as a defendant in his or her individual capacity to this action.

The court will grant the motions to supplement and screen the original complaint, as informed by the plaintiff's supplements to the original complaint and the notice to the court, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Going forward, the plaintiff is advised that he cannot litigate this action or any action in this court by way of notices or letter notices to the court. Even though the plaintiff is proceeding *pro se* and the court will take into consideration his *pro se* status when evaluating pleadings and pending motions, the plaintiff still is required to comply with the rules governing this case. These rules exist to ensure fairness to all parties. If the plaintiff wishes for the court to consider arguments and evidence, he must raise them by way of timely and properly filed motions.

**IV.     Motion for the Appointment of Counsel**

The plaintiff seeks the appointment of counsel. (Docket No. 3). The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical

6

liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), *aff'd,* 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.,* No. 91-5759, 947 F.2d 947 (6th Cir. 1991)(citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).

The plaintiff does not offer any support for his request for the appointment of counsel. (Docket No. 3 at 1-2). The plaintiff has filed a complaint (Docket No. 1), three applications to proceed *in forma pauperis* and supporting documents (Docket Nos. 2, 10, 11, 14, 16, 19, 20, 21), two motions to supplement the record (Docket Nos. 8 and 9), affidavits (Docket Nos. 4, 5, 6, 7), a notice (Docket No. 15), and a motion for extension of time (Docket No. 22). The court finds that the plaintiff is effectively representing his own interests to date. The plaintiff's motion for the appointment of counsel therefore will be denied.

**V.      Section 1983 Standard**

Turner seeks relief pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

## VI. Alleged Facts

In addition to the allegations set forth above in Section I *supra*, the complaint alleges that, while the plaintiff was an inmate at the Morgan County Correctional Complex in September 2016, the plaintiff was prescribed pain medication by the prison doctor for the side effects of Hepatitis C treatment. However, when the plaintiff was transferred to the West Tennessee State Penitentiary in December 2016, defendants Johnson and Bellott discontinued the plaintiff's pain medication "without any examination or conversation with plaintiff." (Docket No. 1 at 10). The complaint alleges that, as retaliation for the plaintiff filing a grievance concerning the cessation of his pain medication, the defendants stopped the plaintiff's chronic care treatment altogether and the plaintiff is in great pain. (*Id.* at 11).

The complaint further alleges that defendants Parker, Woodall, Sweat, and Taylor have a duty to protect the plaintiff from violence at the hands of known violent inmates. (Docket No. 9 at 1). According to the complaint, had defendants Leo, Fitz, Markland, Sweat, and Taylor fulfilled their duties, the plaintiff's attacker would not have had the opportunity to assault the plaintiff on November 9, 2017. (*Id.* at 2-3).

Finally, the complaint alleges that the plaintiff was transferred to the Turney Center Industrial Complex in January 2018. The plaintiff turned in two sick call requests but the plaintiff has been denied medical treatment by Dr. Bigham, despite being in "serious pain." (Docket No. 15 at 2). The plaintiff is being housed with a known gang member and "prison officials is [sic] allowing these dangerous gang members to run wild . . . ." (*Id.*)

## VII. PLRA Screening of Complaint

### A. Deliberate indifference to serious medical needs claims

Failure to provide medical care may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id.* at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. *See Thaddeus-X v. Blatter,* 175 F.3d 378, 401 (6th Cir. 1999).

With respect to defendants Parker, Commissioner of the Tennessee Department of Correction (TDOC), and Woodall, Assistant Commissioner of TDOC, the complaint alleges that these defendants are "legally responsible for the overall operation of the Department and each institution, including

. . . . WTSP . . . ." (Docket No. 1 at 2). The complaint further alleges that West Tennessee State Penitentiary defendants Lebo, Fitz, Markland, Sweat, and Taylor are "legally responsible for the operation of WTSP Site-2 and for the welfare of all the inmates of that prison." (Docket No. 1 at 2). All of these defendants sued in both their individual and official capacities. (*Id.* at 2).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that any of these defendants was directly responsible for the plaintiff's alleged lack of medical treatment at the West Tennessee State Penitentiary, nor can any such allegations be liberally construed against these defendants. Neither does the complaint allege that these defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" party. *Id.* Consequently, the complaint fails to state § 1983 deliberate indifference to serious medical needs claims upon which relief can be granted as to defendants Parker, Woodall, Lebo, Fitz, Markland, Sweat, and Taylor.

Next, the complaint alleges that West Tennessee State Penitentiary defendants Johnson and Bellott were deliberately indifferent to the plaintiff's serious medical needs by, upon the plaintiff's arrival at the West Tennessee State Penitentiary, ordering the cessation of the pain medicine prescribed for the plaintiff by another prison doctor. For purposes of the required PLRA screening,

the court finds that the pain and stiffness resulting from the cessation of the plaintiff's pain medication constitute a sufficiently serious medical need. *See Rouster*, 749 F.3d at 446.

Prison medical personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" (or lack thereof) or by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Berryman v. Rieger*, 150 F.3d 561, 566 ( 6th Cir. 1998)(quoting *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991), for the proposition that a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available."); *compare Jones v. Clement*, No. 3:16-cv-00257, 2018 WL 651337, at *6 (E.D. Tenn. Jan. 31, 2018)(finding that prisoner's claim was, at its core, a dispute over the type of pain treatment chosen by the defendant medical care providers where "[t]he record demonstrates that Defendants promptly and consistently responded to Plaintiff's requests for medical care and offered Plaintiff a variety of diagnostic and treatment options" which the plaintiff refused). Here, as to defendants Johnson's and Bellott's state of mind, the complaint alleges that they discontinued the plaintiff's pain medication without talking to him or examining him (Docket No. 1 at 10) and did not provide an alternative course of treatment. (*Id.* at 17). The court finds that these allegations, if true, could demonstrate that these defendants had access to the plaintiff's medical records and to the plaintiff himself and they deliberately refused to see the plaintiff before discontinuing medication prescribed to him by another doctor for the side effects of Hepatitis C medication. Consequently, the court finds that the complaint sets forth non-frivolous Eighth Amendment claims against Johnson and Bellott in their individual capacities.

With respect to Turney Center Industrial Complex defendant Dr. f/n/u Bigham, the plaintiff alleges that he or she examined the plaintiff's medical file and refused to see or treat the plaintiff (Docket No. 17 at 1) and, despite the plaintiff's efforts to obtain medical treatment, he has received

no medical treatment. As of February 13, 2018, the plaintiff reports that he is in "serious pain" (*id.* at 2). For the same reasons that the court finds that the complaint states colorable claims against Johnson and Bellott, the court finds that the plaintiff states colorable Eighth Amendment claims against Bigham in his or her individual capacity. These claims shall proceed for further development.

### B. Retaliation claims

The complaint alleges that defendants Johnson and Bellott retaliated against the plaintiff for filing grievances by withholding medical care for his chronic medical condition and pain. (Docket No. 1 at 11). A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396.

The court finds that the claims against these defendants are not frivolous, whether construed as Eighth Amendment deliberate indifference to serious medical needs claims or as First Amendment claims of withholding medical care in retaliation for filing grievances. The plaintiff's First Amendment retaliation claims shall proceed against Johnson and Bellott in their individual capacities.

### C. Failure to respond to grievances claims

Some of the plaintiff's § 1983 claims are premised on a defendant's response, or lack of response, to the plaintiff's grievances and/or complaints. However, a plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the plaintiff's claims based on any defendant's failure to respond to plaintiff's grievances do not state a claim upon which relief can be granted. All such claims will be dismissed.

**D.    Violation of TDOC policy claims**

The complaint alleges that defendants Parker, Woodall, Lebo, Fitz, Markland, Sweat, and Taylor "knew from past/present history that housing non-gang members such as the plaintiff with gang members creates a substantial risk of serious harm or death" and "defendants disregard that risk and house . . . non-gang members with gang members anyway." (Docket No. 1 at 4). According to the plaintiff, this practice violates TDOC policies. (*Id.* at 4-5).

However, alleged violations of TDOC policies are not actionable under § 1983. *See Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995)(stating that, after *Sandin*, it became clear that mandatory language in prison regulations does not create a liberty interest protected by the due process clause); *Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015); *Levine v. Torvik*, 986 F.2d 1505, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). Consequently, the court finds that the complaint

13

fails to state § 1983 claims arising from any defendants' failure to follow TDOC policies.

     E.     **Failure to protect claims**

The Eighth Amendment to the United States Constitution requires officers to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984)). Although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized that jail and prison officials cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. *Id.* at 837-38; *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L.Ed.2d 22 (1993). Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Here, the complaint generally alleges that known violent gang members posed an objectively serious risk of harm to the plaintiff and that these defendants were subjectively aware of and deliberately disregarded any such risk. Specifically, the complaint alleges that West Tennessee State Penitentiary defendants Parker, Woodall, Lebo, Fitz, Markland, Sweat, and Taylor "knew from past/present history that housing non-gang members such as the plaintiff with gang members creates a substantial risk of serious harm or death" and "defendants disregard that risk and house . . . non-gang members with gang members anyway." (Docket No. 1 at 4). The complaint further alleges that these

14

defendants also "cover up the gang members['] crimes on staff and other non-gang members." (*Id.* at 6). The complaint alleges that the defendants failed to protect the plaintiff from harm by known gang member inmates. Specifically, the complaint alleges that the defendants knew of these gang members' violent tendencies, but failed separate non-gang member inmates from known gang members inmates, resulting in the plaintiff's injuries from the November 2017 attack.

The plaintiff also alleges that unnamed prison officials at the Turney Center Industrial Complex house known violent gang member inmates with non-gang member inmates, and that these defendants have reason to believe that the gang member inmates pose a serious risk of harm to the plaintiff because the inmates attacked prison officials with knives last year and continue to have access to knives, and, as a result, the plaintiff fears for his safety. The plaintiff has met with a prison counselor, expressed his concerns, and asked to be moved to another unit. (Docket No. 15 at 1). The plaintiff further alleges that these defendants are deliberately indifferent to the plaintiff's risk of injury by initially placing him or keeping him in the same unit as gang member inmates.

The complaint does not allege that either Woodall or Parker, who are TDOC employees, was directly responsible for any of the alleged violations of the plaintiff's rights. Neither does the complaint allege that these defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" party. *Id.* Consequently, the complaint fails to state viable failure to protect claims under § 1983 upon which relief can be granted as to Parker and Woodall based on supervisory liability.

However, the court finds that the plaintiff has stated viable failure to protect claims under 42 U.S.C. § 1983 against defendants Lebo, Fitz, Markland, Sweat, Taylor, and the as-yet identified Turney Center prison officials in their individual capacities for purposes of the initial screening required by 28 U.S.C. § 1915A. The plaintiff's allegations that the defendants, who were well aware

15

of the threat of danger to plaintiff, failed to protect him from physical harm at the hands of gang member inmates state actionable claims under the Eighth Amendment of the United States Constitution. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998)(prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners). Similarly, the plaintiff's allegations that he remains under imminent threat of physical attack by known violent gang member inmates at his current place of incarceration, despite his attempts to be moved away from gang members and despite the defendants' awareness of the threat to the plaintiff's safety, state actionable failure to protect claims. Although it is unclear at this early stage of litigation whether the plaintiff ultimately can prevail on these Eighth Amendment claims, the court finds that the plaintiff's allegations are not frivolous or malicious, and that the defendants alleged to be involved must respond to the plaintiff's complaint.

While designation of "John Doe" or "Jane Doe" defendants is disfavored, it is permissible when the defendants' identities are not known at the time the complaint is filed, but may be determined through discovery. *See Berndt v. Tennessee*, 796 F.2d 879, 882-84 (6th Cir. 1986). The court concludes that it would be inappropriate to dismiss the complaint against the "John Doe" or "Jane Doe" defendants (the as-yet identified Turney Center Industrial Complex prison officials) at this juncture because of the likelihood that the identities of these defendants will be determined during discovery.

### VIII.  Conclusion

In conclusion, the court finds that the plaintiff has alleged imminent danger of serious physical injury and therefore permits the plaintiff to proceed *in forma pauperis* in this action. The plaintiff's motions to supplement (Docket Nos. 8 and 9) will be granted. The plaintiff's notice (Docket No. 15), which the court construes as a motion to amend the complaint, will be granted. However, the

plaintiff's motion for the appointment of counsel (Docket No. 3) will be denied.

Further, having conducted the review required by the PLRA, the court determines that the complaint states § 1983 claims upon which relief may be granted as to the following claims: plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against West Tennessee State Penitentiary defendants Johnson and Bellott and Turney Center Industrial Complex defendant Dr. f/n/u Bigham in their individual capacities; plaintiff's First Amendment claims of withholding medical care in retaliation for filing an inmate grievance against West Tennessee State Penitentiary defendants Johnson and Bellott in their individual capacities; and plaintiff's Eighth Amendment failure to protect claims against West Tennessee State Penitentiary defendants Lebo, Fitz, Markland, Sweat, and Taylor, and the as-yet identified Turney Center prison officials in their individual capacities. These claims survive the screening and may proceed for further development.

The court concludes that it would be inappropriate to dismiss the complaint against the "John Doe" and "Jane Doe" defendants (the as-yet identified Turney Center Industrial Complex prison officials, Captain f/n/u Taylor, and Dr. f/n/u Bigham) at this juncture because of the likelihood that the identities of these defendants will be determined during discovery.

However, the complaint fails to state claims upon which relief can be granted under § 1983 with respect to all other claims against all other defendants. Those claims will be dismissed. All other pending motions will be denied as moot.

An appropriate order will be entered.

ENTER this 21st day of May 2018.

_____
Aleta A. Trauger
United States District Judge