# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| RANDALL TURNER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 3:18-cv-00003 |
|  | ) | Judge Aleta A. Trauger |
| TONY PARKER et al., | ) |  |
| Defendants. | ) |  |

## MEMORANDUM

The magistrate judge has issued a Report and Recommendation ("R&R") (Doc. No. 77), recommending that the defendant Arthur Bellott's Motion to Dismiss (Doc. No. 76) be granted. Before the court are *pro se* plaintiff Randall Turner's Objections to the R&R. (Doc. No. 78.) For the reasons set forth herein, the court will overrule the plaintiff's objections and accept the recommendation that defendant Bellott's Motion to Dismiss be granted.

**I.    Factual and Procedural Background**

In May 2018, the court conducted an initial review of the plaintiff's original Complaint, granted leave to proceed *in forma pauperis*, and dismissed claims against several defendants. However, the plaintiff was permitted to pursue his claims against several other defendants, including Dr. Arthur Bellott. The gravamen of the plaintiff's Complaint is that, although he is not a member of a gang, he has been targeted by gang members, and prison officials have failed in their responsibility to protect him from violence by other prisoners. Those claims remain pending.

Against Dr. Bellott specifically, the plaintiff alleged in the original Complaint that this

defendant is a medical doctor employed by Centurion to provide health services to prisoners at the West Tennessee State Penitentiary ("WTSP"). The plaintiff claimed that Bellott and Dr. Kevin Johnson violated the plaintiff's Eighth Amendment rights when they discontinued the pain medication Neurontin after the plaintiff was transferred to WTSP, without examining or speaking with him. (Doc. No. 1, at 10.) He claimed that "Defendants Johnson/Bellott showed deliberate indifference to a serious medical need" by stopping the plaintiff's medication "without any examination or conversation with the plaintiff," as a result of which the plaintiff suffered "undue serious pain." (*Id.* at 11.) The plaintiff also stated that each defendant was sued "individually and in his or her official capacity." (Doc. No. 1, at 2.)

Dr. Bellott filed his first Motion to Dismiss (Doc. No. 28) shortly thereafter. The plaintiff filed a Response in opposition to the motion (Doc. No. 37) but was thereafter granted leave to file an Amended Complaint. (Doc. Nos. 55, 56, 58.) The first Amended Complaint was simply a single-page document that extended the claims already asserted in the original Complaint against one new defendant. (Doc. No. 58.) Because the plaintiff had already filed numerous piecemeal documents and affidavits, the magistrate judge ordered him to file "one consolidated, comprehensive Amended Complaint that sets forth all allegations against all Defendants that Plaintiff wishes to litigate in this matter." (Doc. No. 66, at 5.) The plaintiff, without objecting to that order, filed his second Amended Complaint on December 10, 2018. (Doc. No. 70.)

There, he alleges, with greater specificity than he had in the original pleading, that Dr. Johnson discontinued his medication Neurontin without examining him or having a conversation with him. (Doc. No. 70, at 1.) He further explains that

> Dr. Bellot was working in concern [sic] with Dr. Johnson to deny the plaintiff medical treatment. Dr. Bellot stated it were Dr. Johnson taking me off my medication. When I did see Dr. Bellot he would never bring my medical file with him. In fairness to Dr. Bellot plaintiff located a letter he wrote Dr. Bellot dated 2-

> 2-2017 in that he did place me back on Neurontin for thirty days. . . . In March 2017 plaintiff chronic care was stop and medication stop again. After I had exhaustive my administrative remedies in regards to Dr. Johnson taking me off my medication[,] I also file grievance on Dr. Bellot but that grievance was not process by grievance Chairperson. There is documented complaints at the prison on how mismanages the grievance process were. . . . In addition, Plaintiff was not the only one who got his medication cancel with no examination from these Doctors there is lot more inmates that was done that way. . . .
>
> Doctor Bellott did not come to my segregation on 1-18-2018.

(Doc. No. 70, at 1–2.)

Following the filing of the second Amended Complaint, Dr. Bellott's first Motion to Dismiss was denied as moot. (Doc. No. 71.) Dr. Bellott filed a Motion to Dismiss the second Amended Complaint on December 28, 2018. (Doc. No. 76.) The plaintiff did not file a response in opposition to that motion, and the magistrate judge issued the R&R on February 7, 2019, recommending that it be granted.

In the R&R, the magistrate judge observes that the Amended Complaint does not specify the capacity in which the plaintiff sues the defendants and that, accordingly, "Plaintiff is deemed to sue Defendants solely in their official capacity." (Doc. No. 77, at 1 n.1 (citing *Wells v. Brown*, 891 F.2d 591, 592–94 (6th Cir. 1989)).) The magistrate judge, however, does not recommend dismissal on that basis. Instead, the magistrate judge found that, even accepting the plaintiff's factual allegations as true and construing them liberally in the plaintiff's favor, those allegations are conclusory and insufficient to establish that Dr. Bellott was deliberately indifferent to the plaintiff's serious medical needs. (Doc. No. 77, at 7–8.) For that reason, he recommends that Dr. Bellott's Motion to Dismiss Plaintiff's Amended Complaint be granted and that the claims against Dr. Bellott be dismissed. (Doc. No. 77, at 8.)

The plaintiff filed Objections (Doc. No. 78), and Dr. Bellott filed a Response to the Objections. (Doc. No. 81.)

**II.     The Plaintiff's Objections**

Although they are somewhat difficult to decipher, the court understands the plaintiff to be asserting the following objections to the R&R:

1.     That the magistrate judge erred in concluding that the court is required to presume that the plaintiff sued the defendants in their official capacities only.

2.     That the magistrate judge erred in finding that the plaintiff failed to state a claim in the Amended Complaint, because the district court already found that the plaintiff stated colorable claims.

3.     That the magistrate judge erred in disregarding the district court's Order and Memorandum conducting the initial screening. (Doc. Nos. 23, 24.)

4.     That the magistrate judge erred when he directed the plaintiff to file an amended complaint adding a new party, because the plaintiff sought only to add a new party, not to amend his pleading. The plaintiff further complains that the magistrate judge's requirement that he file a consolidated Amended Complaint was unfair, because the plaintiff did not have access to his original Complaint and was required to try to reconstruct from memory the allegations and claims in the original Complaint. He states:

> Plaintiff believe that it is fundamentally unfair for the magistrate judge to compel the plaintiff to amended [sic] his complaint not once but twice, and use that amended complaint to dismiss plaintiff [sic] law suit because Plaintiff did not alleges [sic] the issues to meet 1983 civil complaint as he done in the primary filing of civil complaint.

(Doc. No. 78, at 4.) The court understands the plaintiff to be objecting that, if his allegations in the second Amended Complaint are deficient, the magistrate judge erred in failing to consider the allegations in the original Complaint as well.

5. That the magistrate judge erred in finding the plaintiff did not exhaust administrative remedies.

6. That the magistrate judge erred in holding the plaintiff to the same standards as a lawyer.

## III. Standard of Review

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B) & (C). Only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are "proper" under Rule 72(b). Likewise, the applicable statute contemplates *de novo* determination only "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## IV. Discussion

### A. First Objection – The Capacity in which the Defendant Is Sued

In *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989), the Sixth Circuit indeed stated that it would assume that a government official is being sued in his official capacity unless the plaintiff "properly allege[s] capacity in [his] complaint." The magistrate judge cites *Wells* and notes that, because the plaintiff failed to specify the capacity in which he sued Dr. Bellott, the court would presume that he was sued in his official capacity only. (Doc. No. 77, at 1 n.1.) This statement is clearly erroneous. Although the magistrate judge did not base his recommendation

of dismissal on the conclusion, and apparently did not actually presume that the plaintiff sued Dr. Bellott in his official capacity only, the court nonetheless finds it necessary to address the plaintiff's objection.

In an *en banc* decision issued after *Wells*, the Sixth Circuit clarified that *Wells* should not be applied literally as establishing a *per se* rule requiring § 1983 plaintiffs to affirmatively plead "individual capacity" in a complaint. *Moore v. City of Harriman*, 272 F.3d 769, 772, 773 (6th Cir. 2001). Rather, the Sixth Circuit has adopted a "course of proceedings" test "to determine whether § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable." *Id.* "[W]hile it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Id.* Application of the course-of-proceedings test requires consideration of such factors as "the nature of the plaintiff's claims, requests for compensatory or punitive damages, . . . the nature of any defenses raised in response to the complaint, . . . [and] whether subsequent pleadings put the defendant on notice of the capacity in which he or she is sued." *Id.* at 772 n.1.[1]

Applying the course-of-proceedings test here, it is clear to the court, just as it was clear to Dr. Bellott, that the plaintiff is suing Dr. Bellott in his individual capacity. Among other factors, the original Complaint itself, which stated that the plaintiff sued all defendants in their official and individual capacity, put Dr. Bellott on notice of the individual capacity claims against him.

---

[1] In his dissenting opinion, Judge Suhrheinrich observed that, "[a]lthough the majority pays lip-service to the *Wells* rule, what it is really doing is adopting a course of proceedings test. It is disingenuous to do so without explicitly overruling *Wells*." *Moore*, 272 F.3d at 790 (Suhrheinrich, J., dissenting). Judge Gilman concurred with the majority but agreed with Judge Suhrheinrich's assessment, adding, "[t]he majority sitting *en banc*, of course, is perfectly free to abandon the rule in *Wells* (and the dissent does not claim otherwise), but it would be preferable to do so forthrightly. To do otherwise leaves the court open to the criticism that it is denying the obvious . . . ." *Id.* at 775 (Gilman, J., concurring).

Regardless, although the plaintiff's objection has some merit, it ultimately does not afford him any relief, because the magistrate judge's recommendation of dismissal is not based on a finding that Dr. Bellott was sued in his official capacity only.

### B. Objections 2 and 3 – The Effect of the Initial Screening

The plaintiff appears to object to the magistrate judge's recommendation of dismissal based on the district court's conclusion, in the initial screening, that the original pleading stated colorable claims against Dr. Bellott that would be permitted to proceed. This objection is without merit.

The initial screening is just that—an initial screening. It generally does not consider the availability of affirmative defenses or conduct an in-depth analysis of a plaintiff's claims. In this case, the initial screening order specifically noted that, "[d]espite the issuance of process, the Magistrate Judge may *sua sponte* recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2)." (Doc. No. 24, at 5.) Section 1915(e)(2) authorizes dismissal of a claim "*at any time* if the court determines that" the complaint "fails to state a claim for which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). Moreover, in this particular case, the plaintiff filed a second Amended Complaint, which superseded the original. No initial screening of that pleading ever took place. For all these reasons, the magistrate judge did not err in considering the defendant's motion to dismiss, despite issuance of the initial order permitting the claim against Dr. Bellott to proceed.

### C. Objection 5

In his fifth objection, the plaintiff protests that he did in fact attempt to exhaust his administrative remedies as to Dr. Bellott, but the prison did not properly process his grievance. This objection is without merit. Although Dr. Bellott argues in his motion that the plaintiff did

not exhaust any administrative remedies pertaining to a claim against Bellott, the magistrate judge made no findings in that regard and did not premise his recommendation on a failure to exhaust.

### D. Objection 6

The plaintiff objects that the magistrate judge held him to the same standards as parties represented by counsel. The court finds that the magistrate judge did not apply an improper standard of review.

First, although the R&R does not contain a reference to the plaintiff's status as a *pro se* litigant, the magistrate judge's order directing the filing of a second Amended Complaint was specifically issued in the interest of fairness to the plaintiff as a *pro se* litigant, since he was apparently not aware that an amended complaint normally supersedes and replaces the prior pleading.

Second, while pleadings filed by *pro se* litigants must be "liberally construed" and held to a "less stringent standard than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In particular, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and, ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *see also Kafele v. Lerner, Sampson, Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005) ("*[P]ro se* litigants are not relieved of the duty to develop claims with an appropriate degree of specificity."). As this court noted in the screening order, "[e]ven though the plaintiff is proceeding *pro se* and the court will take into consideration his *pro se* status when evaluating pleadings and pending motions, the

plaintiff still is required to comply with the rules governing this case. These rules exist to ensure fairness to all parties." (Doc. No. 23, at 6.) The record establishes that the magistrate judge did not apply an unduly stringent standard.

### E. Objection 4

The plaintiff's only substantive objection is that the magistrate judge's requirement that he file a consolidated complaint was unduly prejudicial, simply because the plaintiff did not have access to his original Complaint when he was drafting the amendment. He implies, but does not actually state, that the original Complaint stated a claim against Dr. Bellott, even if the second Amended Complaint does not, and that the magistrate judge erred in failing to consider the original pleading in assessing the claim against Dr. Bellott.

The problem with this objection is at least two-fold. First, the plaintiff did not apprise the magistrate judge of any difficulties in drafting the second Amended Complaint, nor did he make any attempt to obtain a copy of the original pleading prior to filing his amendment. The magistrate judge expressly notified the plaintiff that "an amended complaint supersedes all prior complaints" and directed him to file a single, consolidated complaint that "sets forth all allegations . . . that Plaintiff wishes to litigate in this matter." (Doc. No. 66, at 4, 5.) Thus, the magistrate judge did not err in considering only the factual allegations contained in the second Amended Complaint in assessing Bellott's Motion to Dismiss.

Second, the plaintiff's allegations in the second Amended Complaint against Dr. Bellott are *more* detailed, not less, than those in the original pleading. He originally painted the claims against Dr. Bellott with a broad brush, covering him with all the same allegations that pertained to Dr. Johnson. In the Amended Complaint, he differentiates between them and makes it clear that Dr. Johnson took a more active role than Dr. Bellott in denying him the medication he

believes he needed.

In short, the magistrate judge did not err in considering only the allegations in the Amended Complaint. Further, the court agrees with the magistrate judge that the facts as alleged by the plaintiff in the amended pleading do not establish deliberate indifference on the part of Dr. Bellott. A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Sixth Circuit has explained that, "where a plaintiff's claims arise from an injury so obvious that even a layperson would easily recognize the necessity for a doctor's attention, . . . it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899–900 (6th Cir. 2004) (citation and internal quotation marks omitted). In contrast, the subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). Although the subjective standard "is meant to prevent the constitutionalization of medical malpractice claims," a plaintiff need not show that the officer acted with the specific intent to cause harm. *Id.* Indeed, "'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 836); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

As the magistrate judge noted, the assertion that Dr. Bellott acted in concert with Dr. Johnson is conclusory and insufficient to establish that Dr. Bellott was deliberately indifferent to

11

the plaintiff's serious medical needs. *See DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (the court "need not accept as true legal conclusions or unwarranted factual inferences"); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("[L]egal conclusions masquerading as factual allegations will not suffice.").

Likewise, the plaintiff's allegations that Dr. Bellott "would never bring [the plaintiff's] medical file with him" and did not see him in segregation on January 18, 2018, even if true, do not suggest deliberate indifference or any other violation of the plaintiff's constitutional rights. The plaintiff's allegation that Dr. Bellott prescribed him Neurontin for thirty days suggests that the doctor was responsive to the plaintiff's request for care and provided treatment to him. There is no indication in the record that Dr. Bellott was responsible for the cessation of the plaintiff's access to Neurontin after that.

At worst, the plaintiff's allegations might be sufficient to state a medical malpractice claim, but they do not support a deliberate indifference claim. Consequently, the court will accept the magistrate judge's recommendation that the deliberate indifference claim against Dr. Bellott be dismissed for failure to state a claim under 42 U.S.C. § 1983 for which relief may be granted.

## V.    Conclusion

For the reasons set forth herein, the court will overrule the plaintiff's objections and accept the magistrate judge's recommendation that the claims against Dr. Arthur Bellott be dismissed. An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge