**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RANDALL TURNER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:18-cv-00003** |
| | ) | **Judge Trauger/Frensley** |
| **TONY PARKER, et al.,** | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

### I.  INTRODUCTION AND BACKGROUND

Pending before the court are the following Motions:

1.      Plaintiff's Motion for Partial Summary Judgment, filed November 21, 2019. Docket No. 116.

2.      Defendant Kavin Johnson's Motion for Summary Judgment, filed February 28, 2020.  Docket No. 145.

3.      Plaintiff's Supplemental Motion for Partial Summary Judgment, filed March 2, 2020.  Docket No. 149.

4.      Plaintiff's Second Supplemental Motion for Partial Summary Judgment, filed March 19, 2020.  Docket No. 154.

5.      What appears to be an identical copy of Plaintiff's Second Supplemental Motion for Partial Summary Judgment, filed April 1, 2020. Docket No. 159.

6.      Defendant's Motion to Strike Docket Numbers 154, 155, 157, 159, 160, 164, 165, and 169, filed on May 4, 2020.  Docket No. 170.

7.      Plaintiff's Motion for Preliminary Injunction, filed May 12, 2020. Docket No. 172.

1

8.     Plaintiff's Renewed Motion to Compel Discovery, filed May 14, 2020. Docket No. 174.

Plaintiff filed this pro se, in forma pauperis action, alleging violations of his Eighth Amendment rights. Docket No. 1. With regard to Plaintiff's claims against Defendant Johnson, the only remaining Defendant in this action,[1] Plaintiff avers that Defendant demonstrated deliberate indifference to Plaintiff's serious medical needs when he discontinued the Neurontin prescription Plaintiff had received from an outside facility and would not renew it during the course of Plaintiff's incarceration at the West Tennessee State Penitentiary from December 2016 to January 2018. *Id*. Plaintiff additionally avers that Defendant ceased chronic care treatment in retaliation for Plaintiff's filing of a grievance. *Id.* Plaintiff sues Defendant in his individual and official capacities, seeking $250,000 in damages. *Id.; see also*, Docket No. 117.

As an initial matter, on December 11, 2019, the undersigned issued an Amended Scheduling Order, which set forth in pertinent part as follows:

**Discovery Deadlines**

All discovery shall be completed by **January 31, 2020**. By this, the court means that all written discovery should be served far enough before the completion date, i.e. at least thirty days prior to the discovery completion deadline, so that responses or objections to any written discovery can be made prior to the completion deadline. . . .

**Dispositive Motions**

All motions to dismiss and for summary judgment shall be filed by **February 28, 2020.**

Responses to <u>motions to dismiss</u> shall be filed **within fourteen (14) days** of the filing of the motion. Responses to <u>motions for summary judgment</u> shall be filed **within twenty-one (21) days** of the filing of the motion. Plaintiff is

---

[1] Dr. Kavin Johnson is the only remaining served Defendant in this action. All other served Defendants were terminated as parties on May 21, 2018, August 14, 2018, April 16, 2019, and October 9, 2019. *See* Docket Nos. 24, 47, 89, 112.

forewarned that dispositive motions must be responded to as set forth herein, unless an extension is granted by the court, and that failure to respond to the motions and to statements of facts may result in the court taking the facts alleged in the matter as true and granting the relief requested. In responding to the motions for summary judgment, plaintiff may not just rely on the complaint. Plaintiff must show there is a material dispute of fact with citation to the record, affidavits, or other matter of evidence. Plaintiff should read and comply with the Federal Rule of Civil Procedure 56 and Local Rule 56.01.

**Other Motions**

Any other motions (other than in limine or related to trial matters) must be filed by **February 7, 2020**.

Docket No. 122.

In light of the court's Amended Scheduling Order, all discovery requests made after January 31, 2020 are untimely. Plaintiff's Renewed Motion to Compel Discovery, filed May 14, 2020 (Docket No. 174) will therefore be DENIED.

With regard to Plaintiff's "Supplement Motion for Partial Summary Judgment" (Docket No. 149), filed on Monday, March 2, 2020, the undersigned notes that, in order for that Motion to have been received on Monday, March 2nd, it would have had to be mailed by or on Friday, February 28th. Accordingly, although it was received after the February 28th dispositive motion deadline had passed, the undersigned will consider the Motion.

Plaintiff's Second Supplemental Motion for Partial Summary Judgment, filed March 19, 2020 (Docket No. 154), and the second copy of Plaintiff's Second Supplemental Motion for Partial Summary Judgment, filed April 1, 2020 (Docket No. 159), however, are untimely-filed, as they were filed beyond the undersigned's February 28, 2020 dispositive motion deadline. They should, therefore, be DENIED.

With regard to the court's provision that all non-dispositive motions must be filed by February 7, 2020, the court notes that Plaintiff's Motion for Preliminary Injunction (Docket No.

172) was filed on May 12, 2020 and is therefore untimely. Because of the nature of a Motion for Preliminary Injunction, however, the undersigned has reviewed Plaintiff's Motion to determine whether grounds for injunctive relief may exist. The undersigned notes that Plaintiff seeks injunctive relief based on the actions of Dr. Cortez Tucker, who is not a party to the instant action. Because the Motion is untimely and the matter is not properly before the court, Plaintiff's Motion for Preliminary Injunction (Docket No. 172) should be DENIED.

Given the clear deadlines and instructions in the court's Amended Scheduling Order and the recommendations above, the only Motions properly before the court are Plaintiff's Motion for Partial Summary Judgment, filed November 21, 2019; Defendant's Motion for Summary Judgment, filed February 28, 2020; and Plaintiff's "Supplement Motion for Partial Summary Judgment" (Docket No. 149), filed on Monday, March 2, 2020. The court will address those Motions herein.

When reviewing the filings in support of, or in response to, each of the two timely pending Motions, the undersigned notes that the court's Amended Scheduling Order also clearly explained the twenty-one (21) day response period and the ramifications for failure to comply. *See* Docket No. 122, quoted above. The court's Amended Scheduling Order further directed Plaintiff to review Fed. R. Civ. P. 56 and Local Rule 56.01. *Id.* The undersigned notes that, beyond the untimely Motions Plaintiff has filed, Plaintiff has continued to file a myriad of untimely submissions. In order to proceed with the court's analysis, therefore, the undersigned must first determine which supportive or responsive materials were timely-filed.

With regard to Plaintiff's Motion for Partial Summary Judgment, filed November 21, 2019 (Docket No. 116), Defendant's responsive materials must have been filed on or before December 12, 2019, and Plaintiff's reply materials must have been filed on or before December

27, 2019.[2] Accordingly, the undersigned will not consider any materials related to Plaintiff's November 21, 2019 Motion for Partial Summary Judgment that were filed after these dates.

With respect to Defendant's Motion for Summary Judgment filed February 28, 2020 (Docket No. 145), Plaintiff's responsive materials must have been filed on or before March 20, 2020, and Defendant's reply materials must have been filed on or before April 3, 2020. Accordingly, the undersigned will not consider any materials related to Defendant's February 28, 2020 Motion for Summary Judgment that were filed after these dates.

As to Plaintiff's "Supplement Motion for Partial Summary Judgment" filed on Monday, March 2, 2020 (Docket No. 149), Defendant's responsive materials must have been filed on or before March 23, 2020, and Plaintiff's reply materials must have been filed on or before April 6, 2020.

Therefore, the undersigned will consider the following:

On November 21, 2019, Plaintiff filed a Motion for Partial Summary Judgment (Docket No. 116) and a "Declaration in Support" (Docket No. 117). On November 27, 2019, Plaintiff filed a Statement of Undisputed Facts. Docket No. 120. On December 12, 2019, Defendant filed a Response to Plaintiff's Motion, and also filed a Response to Plaintiff's Statement of Undisputed Facts. Docket Nos. 123, 124.

On February 28, 2020, Defendant filed a Motion for Summary Judgment (Docket No. 145), a Memorandum in Support (Docket No. 146), an Affidavit with twenty-five (25) exhibits (Docket Nos. 147 – 147-25), and a "Statement of Material Facts" (Docket No. 148). On March

---

[2] On January 28, 2020, Plaintiff filed a document entitled "Declaration in responses to Defendant Kavin Johnson Responses to Plaintiff Motion for Partial Summary Judgment and Statement of Undisputed Facts of Randall Turner" (Docket No. 141), which appears to be a Reply. This submission was untimely-filed by over one month, and was filed without Leave of Court; the undersigned will therefore not consider it.

5

17, 2020, Plaintiff filed a document entitled "Declaration of Randall Turner in Responses [sic] to Defendant Kavin Johnson (M.D.) Motion for Summary Judgment and Statement of Material Facts." Docket No. 152.

On March 2, 2020, Plaintiff filed a "Supplement Motion for Partial Summary Judgment." Docket No. 149. Plaintiff's "Supplement Motion" is more closely akin to a second Response to Defendant's Motion for Summary Judgment than it is a proper Motion. Additionally, Plaintiff has failed to file the requisite Memorandum of Law or Statement of Undisputed Material Facts in support of his "Supplement Motion for Partial Summary Judgment." On March 19, 2020, Defendant filed a response to Plaintiff's "Supplement Motion." Docket No. 153.

### A. Plaintiff's Partial Motion for Summary Judgment, filed November 21, 2019

Although Plaintiff's November 21, 2019 Motion is titled as a Motion for Partial Summary Judgment, it seeks the recovery of damages from Dr. Kavin Johnson for violation of Plaintiff's Eighth Amendment rights, pursuant to 42 U.S.C. 1983. Docket No. 116. Because Plaintiff's Motion seeks a favorable ruling against the only remaining Defendant in this action, the undersigned will construe Plaintiff's Motion as a Motion for Summary Judgment seeking to prevail on the case in its entirety. Plaintiff has additionally filed a "Declaration in Support," in which he contends that, on December 8, 2016, Defendant discontinued his Neurontin without conversation or examination and without providing alternative treatment, thereby leaving him in pain. Docket No. 117.

On November 27, 2019, Plaintiff filed a document entitled "Statement of Undisputed Facts." Docket No. 120. Despite the undersigned's instruction to read and comply with Fed. R. Civ. P. 56 and Local Rule 56.01 set forth in the Order quoted above, however, Plaintiff's "Statement of Undisputed Facts" fails to comply with Local Rule 56.01(b), as Plaintiff has failed to set out each

fact in a separate paragraph and failed to support each fact by the requisite specific citation to the record.

On December 12, 2019, Defendant filed a Response to Plaintiff's Motion with attached Declaration of Counsel. Docket Nos, 123, 123-1. Defendant has additionally filed a Response to Plaintiff's Statement of Undisputed Facts, which not only responds to Plaintiff's Statement of Undisputed Facts, but which also contains "Additional Undisputed Facts Submitted by Non-Moving Party." Docket No. 124. Plaintiff has not responded to Defendant's "Additional Undisputed Facts Submitted by Non-Moving Party."

**B.      Defendant's Motion for Summary Judgment, filed February 28, 2020**

On February 28, 2020, Defendant filed a Motion for Summary Judgment (Docket No. 145), a Memorandum in Support (Docket No. 146), an Affidavit with twenty-five (25) exhibits, including excerpts of Plaintiff's medical records (Docket Nos. 147 – 147-25), and a "Statement of Material Facts" (Docket No. 148).

In his Motion and supporting materials, Defendant argues there are no genuine issues of material fact regarding the fact that he acted reasonably and in accordance with applicable standards of care, such that he was not deliberately indifferent to Plaintiff's serious medical needs. Docket No. 145. Defendant also argues that Plaintiff cannot demonstrate that any act or omission on the part of Defendant caused or contributed to the injuries he complains of in this action. *Id.* Defendant argues that he is entitled to a judgment as a matter of law and that this action should be dismissed. *Id.* Defendant also requests that costs be taxed to Plaintiff. *Id.*

On March 17, 2020, Plaintiff filed a document entitled "Declaration of Randall Turner in Responses [sic] to Defendant Kavin Johnson (M.D.) Motion for Summary Judgment and Statement of Material Facts." Docket No. 152. Despite its title, Plaintiff's filing is a partial

response to parts of Defendant's Affidavit. It is neither a response to Defendant's Motion for Summary Judgment, nor a response to either Defendant's Statement of Undisputed Facts or "Additional Undisputed Facts Submitted by Non-Moving Party."

### C. Plaintiff's "Supplement Motion for Partial Summary Judgment," filed March 2, 2020

On March 2, 2020, Plaintiff filed a "Supplement Motion for Partial Summary Judgment." Docket No. 149. In his "Supplement Motion," Plaintiff argues that Defendant and his counsel have made "false and misleading statements to the court" which "should Entitle [*sic*] the plaintiff to summary judgment." *Id.* Specifically, Plaintiff argues that Defendant's counsel "added words" to Plaintiff's allegations which made the statement misleading. *Id.* Plaintiff also argues that Defendant's counsel paraphrased Plaintiff's allegations "in his own words," resulting in "two statements" that do "not have any SIMILARITY," such that it can be called a "mistake." *Id.* (capitalization original). Plaintiff takes issue with Defendant's counsel's characterization of the two statements as "CONFUSION" and further argues that Defendant and his counsel have "fabricate[d] parts of the plaintiff [*sic*] medical records 'adding words' on Documents to make it look as if the plaintiff have received such treatment." *Id.* (capitalization original). Plaintiff seeks the exclusion of the medical records and any other documents submitted by Defendant or his counsel. *Id.*

As noted, Plaintiff has failed to file the requisite Memorandum of Law or Statement of Undisputed Facts in support of his "Supplement Motion for Partial Summary Judgment."

On March 19, 2020, Defendant filed a response to Plaintiff's "Supplement Motion." Docket No. 153. In his Response, Defendant notes that it is unclear whether Plaintiff's "Supplement Motion" is intended to be a supplement to Plaintiff's prior Motion (Docket No.116) or whether it is a stand-alone Motion. *Id.* Defendant notes that if it is meant to be a stand-alone

Motion, Plaintiff has failed to comply with Local Rule 56.01(b), by failing to include the requisite statement of undisputed material facts.

Responding to Plaintiff's allegations specifically, Defendant argues that the first "misleading statement" Plaintiff discussed was alleged to have been made in Defendant's March 2019 Motion to Dismiss (Docket No. 83) – a Motion which Defendant withdrew on April 17, 2019 (Docket No. 90). With regard to all of Plaintiff's claims of mischaracterizing things and making misleading statements, Defendant "takes issue with the Plaintiff parsing the language of memorandum [*sic*] and motions filed in this case to create the appearance of impropriety or a false or misleading statement." Docket No. 153. Defendant responds that, if Plaintiff believes there has been a misstatement or mischaracterization of something, his remedy is not in the form of a Motion for Summary Judgment – whether Partial or otherwise. *Id.* Defendant argues that Plaintiff's allegations of the alteration of medical record evidence is "a serious issue for the court to address and the allegation warrants serious attention," but "Plaintiff raises this allegation with absolutely no basis or proof." *Id.* Defendant notes that the "medical records that were sent to the Plaintiff, and the records that were filed with the court in support of Dr. Johnson's Motion for Summary Judgment, were those obtained directly from the custodian of records, Tennessee Department of Corrections, rather than the Defendant himself. The Defendant and Defendant's counsel vehemently deny there has been any alteration of the records in this case." *Id.* Defendant therefore argues that Plaintiff's "Supplement Motion for Partial Summary Judgment." (Docket No. 149) should be dismissed.

### D. Defendant's Motion to Strike, filed May 4, 2020

Defendant filed a Motion to Strike the following:

1. Plaintiff's Second Supplemental Motion for Partial Summary Judgment, filed

9

March 19. Docket No. 154.

2.      The Declaration in Support of Plaintiff's Second Supplemental Motion for Partial Summary Judgment, filed March 19, 2020. Docket No. 155.

3.      The Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary judgment, filed March 31, 2020. Docket No. 157.

4.      The Second Supplemental Motion for Partial Summary Judgment, filed April 1, 2020 (which appears to be identical to Docket No. 154, but later-filed). Docket No. 159.

5.      The Declaration in Support of the Second Supplemental Motion for Partial Summary Judgment, filed April 1, 2020. Docket No. 160.

6.      The Declaration of Randall Turner in Responses [*sic*] to Defendant Kavin Johnson "Alleges" [*sic*] Undisputed Facts, filed April 9, 2020. Docket No. 164.

7.      Plaintiff's Responses to Defendant Kavin Johnson, M.D. "Alleges" [*sic*] Statement of Undisputed Facts. Docket No. 165.

8.      The Declaration of Randall Turner, filed April 24, 2020. Docket No. 169.

As the undersigned has discussed above, these individual filings are untimely. Accordingly, upon the Honorable District Judge's acceptance of the instant Report and Recommendation, Defendant's Motion to Strike would become MOOT. In light of the fact that the filings Defendant seeks to have stricken were untimely-filed and the undersigned recommends that this action be dismissed with prejudice, the undersigned will not further analyze Defendant's Motion to Strike.

**E.      Plaintiff's Motion for Preliminary Injunction, filed May 12, 2020, and Plaintiff's Renewed Motion to Compel Discovery, filed May 14, 2020**

As the undersigned has discussed above, these filings are untimely and should be DENIED.

10

For the reasons discussed below, the undersigned finds that there are no genuine issues of material fact and that Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 145) be GRANTED. In light of this recommendation, the undersigned further recommends that Plaintiff's Motion for Partial Summary Judgment (Docket No. 116) and "Supplement Motion for Partial Summary Judgment" (Docket No. 149) be DENIED, and that Defendant's Motion to Strike (Docket No. 170), along with all other pending Motions in this action, be DENIED AS MOOT. Accordingly, the undersigned recommends that this action be DISMISSED WITH PREJUDICE.

## II.  UNDISPUTED FACTS[3]

Plaintiff was first transferred to West Tennessee State Penitentiary ("WTSP") from Morgan County Correctional Complex ("Morgan County") on November 30, 2016. Docket No. 147, ¶ 3. Plaintiff had a history of anemia and Hepatitis C, for which he had undergone therapy. *Id.* While the Hepatitis C appeared to have resolved, Plaintiff complained of Neuropathy in his feet. *Id.* Plaintiff was prescribed Neurontin while at Morgan County by Dr. Paul Niner. *Id.*

Neurontin is a narcotic and not part of the formulary for prescription medications at WTSP. *Id.*, ¶ 4. Neurontin is generally discouraged as a therapy for inmates because of the potential for addiction and abuse. *Id.* Where possible, Defendant attempts to treat complaints of pain with therapies other than Neurontin. *Id.* On December 8, 2016, Defendant entered an Order directing that Plaintiff's Neurontin be discontinued "until seen by provider." *Id.*, ¶ 5.

Plaintiff was seen on sick call on December 9, 2016, complaining of tingling and pain in

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

his feet. *Id.*, ¶ 6. Plaintiff's vital signs were normal on his December 9, 2016 visit, although he did complain of pain at an eight out of ten scale. *Id.*, ¶ 6. Per protocol, Plaintiff was given Ibuprofen for pain and told to return within seven days if his condition did not improve. *Id.* Defendant gave a verbal order on for Plaintiff to receive Ibuprofen 200 mg, twice per day, as needed, for four days. *Id.*, ¶ 7.

On December 11, 2016, Plaintiff filed a grievance against Defendant, which was resolved on March 9, 2017. Docket No. 124, ¶¶ 4, 5.

On December 12, 2016, Plaintiff was seen on a sick call request for pain in his feet. Docket No. 147, ¶ 8. At his December 12, 2016 visit, Plaintiff's vital signs were normal, although he did walk with some difficulty. *Id.* An appointment was scheduled for Plaintiff to see a provider on December 16, 2016. *Id.*

On December 13, 2016, Defendant noted that Plaintiff was able to walk and had no other complaints, and further noted that Plaintiff's HCV had resolved, as did his anemia. *Id.*, ¶ 9. Also, on December 13, 2016, Defendant repeated his order to discontinue Plaintiff's Neurontin, and issued an order that Plaintiff receive Pamelor 25 mg. *Id.*, ¶ 10. Pamelor is a tricyclic antidepressant which may also be used to treat pain and neuropathy. *Id.*

On December 14, 2016, Plaintiff presented to sick call with complaints of generalized pain to his back and whole body. *Id.,* ¶ 11. At that visit, Plaintiff's vital signs were normal, and he was ambulating well; Plaintiff refused Ibuprofen for pain. *Id.*

On December 16, 2016, labs were ordered for Plaintiff and Dr. Bellott ordered that Plaintiff be followed up in the chronic care clinic. *Id.*, ¶ 12. On January 12, 2017, Dr. Bellott prescribed Plaintiff Ibuprofen 200 mg, twice per day, as needed, for four days. *Id.*, ¶ 14.

On January 17, 2017, Plaintiff was seen on sick call request complaining that his legs

12

"feel like [his] veins are tight." *Id.*, ¶ 13. Plaintiff was evaluated and had normal vital signs. *Id.* Plaintiff showed no signs of acute distress, walked to the triage room with no difficulty, and showed no swelling in his extremities. *Id.* At the January 17, 2017 visit, Plaintiff complained about the change in his medications. *Id.* Plaintiff was referred for an appointment with a physician. *Id.*

On January 19, 2017, an appointment was scheduled for Plaintiff to see a physician concerning his Neurontin prescription. *Id.*, ¶ 15.

On January 25, 2017, Dr. Bellott ordered a follow-up on Plaintiff's lab work. *Id.*, ¶ 16. On January 31, 2017, Dr. Bellott reinstated the Neurontin order for Plaintiff for 400 mg twice per day, for 120 days. *Id.*, ¶ 17.

Medication administration records confirm Plaintiff received nortriptyline (Pamelor) 25 mg from January 1 through January 31. *Id*, ¶ 18. Plaintiff received Ibuprofen 200 mg, twice a day, for four days, from January 12 through January 15, 2017. *Id.*

Defendant performed a chart review concerning Plaintiff's care on February 1, 2017. *Id.*, ¶ 19. In his opinion, based upon his chart review, Defendant opined that the risks of Neurontin to Plaintiff outweighed the potential benefits. *Id.* Defendant noted that if Plaintiff's symptoms worsened, we would obtain an EMG-NCV (nerve conduction study) evaluation in Nashville. *Id.* To Defendant's knowledge, and based upon his review of the records, no nerve conduction study had been performed previously to evaluate Plaintiff's complaints of neuropathy. *Id.*

Defendant entered an Order on February 1, 2017, directing that Plaintiff's Neurontin be discontinued at the end of February and ordering that Defendant see Plaintiff in the clinic in April regarding the complaints of neuropathy in his feet. *Id.*, ¶ 20.

Plaintiff's lab work from February 3, 2017 indicated that his tests were, for the most part,

13

normal and did not indicate concerns at that time. *Id.*, ¶ 21.

Medication administration records show that Plaintiff received Pamelor from February 1 through February 28. *Id.*, ¶ 22. Plaintiff additionally began receiving Neurontin, as prescribed by Dr. Bellott, again on February 13, through February 28. *Id.*

On March 7, 2017, Plaintiff was advised that he would have an appointment with Defendant and advised that he may make sick call requests as needed. *Id.*, ¶ 23.

On March 15, 2017, Plaintiff was discharged from the chronic care clinic by another provider. *Id.*, ¶ 24. Defendant did not enter the Order discharging Plaintiff from chronic care, nor did he direct anyone to, although he does not disagree that Plaintiff could be discharged from the clinic as his Hepatitis C and anemia had resolved. *Id.*

Defendant is not in charge of scheduling appointments for the chronic care clinic. *Id.* Plaintiff was to be scheduled to see Defendant in the clinic in April 2017. *Id.*, ¶ 49.

Plaintiff continued to receive Pamelor through the month of March 2017. *Id.*, ¶ 26. Plaintiff's Neurontin was continued until March 13, 2017. *Id.*

On April 19, 2017, Defendant evaluated Plaintiff. *Id.*, ¶ 27. Plaintiff informed Defendant of the neuropathy in his feet as diagnosed at Morgan County, but also told Defendant that no diagnostic work had been performed at that time. *Id.* At the April 19th evaluation, upon examination, Plaintiff was able to walk without difficulty. *Id.* Defendant did not believe that Neurontin was indicated. *Id.* Defendant noted that Plaintiff should no longer receive Neurontin. Also on April 19th, Plaintiff refused to continue taking Pamelor, so Pamelor was discontinued at Plaintiff's request. *Id.* Defendant offered Plaintiff a neurology consult, but Plaintiff refused. *Id.*

On May 17, 2019, Plaintiff was prescribed Ibuprofen 800 mg three times per day, as needed, for ten days. *Id.*, ¶ 30. This Ibuprofen was administered by Plaintiff's dentist. *Id.*

14

On November 9, 2017, Plaintiff was prescribed Ibuprofen 200 mg three times per day, as needed, for four days. *Id.*, ¶ 31. Plaintiff received Ibuprofen as ordered from November 9 through November 13, December 27 through December 31, January 2 through January 6, and January 10 through January 14. *Id.*

Plaintiff was seen on a well check for mental health evaluation on December 5, 2017, December 21, 2017, and December 27, 2017, and was noted to exhibit no signs of distress. *Id.*, ¶ 33.

Plaintiff made sick call requests concerning his leg pain in December of 2017 and January 2018 and was scheduled to see a physician. *Id.*, ¶ 34. On December 27, 2017, January 2, 2018, and January 10, 2018, Plaintiff was again prescribed Ibuprofen 200 mg three times per day, as needed, for four days. *Id.*, ¶ 35.

When Plaintiff was transferred out of WTSP to the Turney Center Industrial Complex at the end of January 2018, he was restarted on Pamelor, but was not prescribed Neurontin. *Id.*, ¶ 36.

It is Defendant's opinion, within a reasonable degree of medical certainty, that the care rendered to Plaintiff while he was incarcerated at WTSP was appropriate and within the applicable standard of care. *Id.*, ¶ 37. Neurontin is a scheduled narcotic and not part of the formulary at WTSP. *Id.* There is a risk of addiction and abuse with Neurontin, especially within a prison setting. *Id.* Alternative therapies such as Pamelor and Ibuprofen are often used to control pain. *Id.* Plaintiff's evaluations indicated that his gait was normal, he had no edema, and his pain did not appear to be inhibiting his daily functioning. *Id.* Under those circumstances, Defendant would not typically prescribe Neurontin. *Id.* Plaintiff's complaints of generalized pain at times would not lead one to prescribe Neurontin, as it is specifically for the treatment of neuropathy.

*Id.*

To Defendant's knowledge, no nerve conduction study was performed to assess Plaintiff's neuropathy, and when he offered to send Plaintiff for a neurological consult, Plaintiff refused. *Id.* Defendant would not prescribe Neurontin to Plaintiff without a more detailed work up. *Id.*

Plaintiff received constant and regular medical attention while at WTSP. *Id.*, ¶ 38. Defendant does not believe that any provider exhibited deliberate indifference to Plaintiff or his complaints of pain. *Id.* The providers at WTSP, including Defendant, were attempting to find an appropriate way to manage Plaintiff's pain within a correctional care setting. *Id.*

Nothing Defendant did or failed to do caused or contributed to the injuries complained of by Plaintiff. *Id.*, ¶ 38.

During his incarceration, Plaintiff was seen by numerous providers who charted their examination such that the information was available for review by Defendant. Docket No. 123-1, Ex. A, pp. 7-8. 11-18. The records reflect that Defendant provided alternative treatment, in the form of Ibuprofen, for pain relief pending a full examination by him to determine whether Neurontin was appropriate. *Id.*, Ex. A, p. 8. Defendant made clear his medical decision-making on February 1, 2017 in his chart review when he notes "risk of Neurontin therapy out-weigh any benefits." *Id.*, Ex. A, p. 19. The records further demonstrate a number of chronic care treatment plans which were implemented after the date of the filing of Plaintiff's grievance against Defendant. *Id.*, Ex. A., pp. 1-4.

### III.  LAW AND ANALYSIS.

#### A.    Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

16

**b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed his Motion for Summary Judgment on February 28, 2020. Docket No. 145. Plaintiff has failed to respond to that Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

**c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...

. . .

**g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Although Plaintiff has responded to Defendant's Affidavit, Plaintiff has failed to respond to Defendant's Statement of Undisputed Facts. Plaintiff has also failed to respond to Defendant's "Additional Undisputed Facts Submitted by Non-Moving Party." Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment."

### B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The court will, therefore, consider whether Defendant has met his burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no

18

genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

### C. 42 U.S.C. § 1983

### 1. Generally

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

19

## 2.    Eighth Amendment

### a.  Generally

The Eighth Amendment provides that:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### b.  Deliberate Indifference to Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104.  This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

20

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id.* (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d

653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402, *citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994).

Additionally, when treatment has been rendered and the dispute is over the choice of treatment provided, such dispute is insufficient to form the basis of an action for deliberate indifference. *See Graham v. Cnty. Of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). Even if the treatment rendered was in some way deficient, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06.

### E. The Case at Bar

Although Plaintiff asserts that Defendant violated his Eighth Amendment rights by discontinuing his Neurontin and by allegedly discharging him from chronic care in retaliation for his filing a grievance about it, the undisputed facts establish that Plaintiff received constant and regular medical attention while at WTSP. Docket No. 148, ¶ 38. It is Defendant's opinion, within a reasonable degree of medical certainty, that the care rendered to Plaintiff while he was incarcerated at WTSP was appropriate and within the applicable standard of care. *Id.*, ¶ 37.

It is further undisputed that Neurontin is a scheduled narcotic and not part of the formulary at WTSP, and that there is a risk of addiction and abuse with Neurontin, especially within a prison setting. *Id.* Alternative therapies such as Pamelor and Ibuprofen are often used to control pain. *Id.* The undisputed facts further establish that Plaintiff repeatedly received both Pamelor and Ibuprofen. *Id.*, *passim*.

Plaintiff's evaluations indicated that his gait was normal, he had no edema, and his pain did not appear to be inhabiting his daily functioning. *Id.*, ¶ 37. Under those circumstances,

22

Defendant would not typically prescribe Neurontin. *Id.* Plaintiff's complaints of generalized pain at times would not lead one to prescribe Neurontin, as it is specifically for the treatment of neuropathy. *Id.*

To Defendant's knowledge, no nerve conduction study was performed to assess Plaintiff's neuropathy, and when he offered to send Plaintiff for a neurological consult, Plaintiff refused. *Id.* Defendant would not prescribe Neurontin to Plaintiff without a more detailed work up. *Id.* It is further undisputed that nothing Defendant did or failed to do caused or contributed to the injuries complained of by Plaintiff. *Id.*, ¶ 38.

The Plaintiff has failed to satisfy either the objective or subjective component of a claim for deliberate indifference. At is core, the Plaintiff's claim amounts to a dispute regarding the choice of treatment provided. The record clearly establishes that Plaintiff received care and treatment for his condition. While there can, and was in fact, different opinions regarding treatment of Plaintiff's condition, that disagreement alone is insufficient to form a basis of an action for deliberate indifference. As such, the Plaintiff cannot establish that the Defendant was deliberately indifferent to his medical conditions.

With regard to Plaintiff's assertion that Defendant discontinued his chronic care in retaliation for filing a grievance against him, it is undisputed that: (1) Defendant is not in charge of scheduling appointments for the chronic care clinic; (2) Defendant did not enter the Order discharging Plaintiff from chronic care; (3) Defendant did not direct anyone else to discharge Plaintiff from chronic care; and (4) another provider discharged Plaintiff from the chronic care clinic. *Id.*, ¶¶ 24, 49. It is further undisputed that Plaintiff filed his grievance against Defendant on December 11, 2016 and that Plaintiff continued to receive medical care at WTSP until his transfer to Turney Center Industrial Complex at the end of January 2018. *Id., passim.*

Accordingly, the undisputed facts establish that Plaintiff received regular and appropriate medical care while incarcerated at WTSP. While the Eighth Amendment guarantees that prisoners receive adequate medical care; it does not guarantee the prisoner his choice of medical care. Because the undisputed facts establish that Plaintiff received regular and constant medical care, including the administration of appropriate medication, Plaintiff cannot establish his Eighth Amendment claim. Defendant is therefore entitled to a judgment as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, the undersigned finds that there are no genuine issues of material fact and that Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 145) be GRANTED. In light of this recommendation, the undersigned further recommends that Plaintiff's Motion for Partial Summary Judgment (Docket No. 116) and "Supplement Motion for Partial Summary Judgment" (Docket No. 149) be DENIED, and that Defendant's Motion to Strike (Docket No. 170), along with all other pending Motions in this action, be DENIED AS MOOT. Accordingly, the undersigned recommends that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**